IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| A.D.,<br><br>      Plaintiff,<br><br>      v.<br><br>COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,<br><br>      Defendant. | Civil No. 20-6198 (RMB)<br><br>**OPINION** |

**BUMB**, United States District Judge:

This matter comes before the Court upon an appeal by Plaintiff from a denial of social security disability benefits.

For the reasons set forth below, the Court vacates the decision of the Administrative Law Judge ("ALJ") and remands for proceedings consistent with this Opinion's reasoning.

**I.   STANDARD OF REVIEW**

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d

1

445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. Id. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" Id. §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.

> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" Smith, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work."2 *202 Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." Id. §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education, and work experience[.]" Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

Hess v. Comm'r Soc. Sec., 931 F.3d 198, 201–02 (3d Cir. 2019).

## II. **FACTS**

The Court recites herein only the facts that are necessary to its determination on appeal. Plaintiff, who was 31 years old on October 13, 2015, the date she applied for supplemental security income, claims a disability, in part, derived from her mental health diagnoses, including, but not limited to, anxiety, depression, and post-traumatic stress disorder, and the mental function limitations that are associated with such diagnoses. Plaintiff's Brief at 6-7. Plaintiff identified that she is a victim of childhood sexual and emotional abuse, suffered from ages six to nine years by a family member, and has a long-term learning disorder. *Id.* at 4-5. Plaintiff's highest level of education is a high school diploma. *Id.* at 5. Plaintiff also alleges physical impairments that manifest in the form of

3

headaches and vertigo due to photo and sound sensitivity, for which she takes prescription medication but still has breakthrough headaches. *Id.* at 9-10.

The administrative record includes an extensive amount of medical evidence and is comprised of approximately two dozen different opinions, evaluations, and treatment records completed by Plaintiff's treating physicians, psychologists and other health care professionals, as well as reports from three consultative examiners (Dr. Theodore Brown, Dr. Juan Cornejo, and Dr. Robert Wathers) and two state-agency phycologists (Dr. Joseph Wieliczko and Dr. Stephen Kleinman). Tr. 385-851. In reviewing the record and appropriately weighing the vast amount of medical and non-medical evidence before her, the ALJ undeniably faced an arduous task.

With respect to the current appeal, both parties urge the Court to prioritize certain evidence as cited in their supporting briefs. For example, Plaintiff provided the following list of mental health diagnoses from physicians, psychologists, and nurse practitioners who have conducted her in-person evaluations:

| Date | R. at | Diagnoses |
|---|---|---|
| 5/26/2015 | 411 | anxiety, depression |
| 11/20/2015 | 456 | recurrent episode of moderate major depressive disorder |
| 12/15/2015 | 478-79 | major depression, generalized anxiety disorder, borderline personality disorder, learning disorder |
| 3/31/2016 | 611 | recurrent, severe major depressive disorder |
| 5/3/2016 | 494 | generalized type social phobia, dysthymic disorder |
| 4/20/2017 | 745 | anxiety, depression |
| 8/4/2017 | 676 | major depressive disorder, anxiety disorder |
| 1/5/2018 | 495 | moderate major depressive disorder, unspecified anxiety disorder |
| 1/29/2018 | 850 | major depressive disorder, anxiety disorder, post-traumatic stress disorder |
| 6/8/2018 | 802 | recurrent moderate major depressive disorder, anxiety disorder |
| 11/2/2018 | 832 | recurrent moderate major depressive disorder, anxiety disorder |
| 1/4/2019 | 850 | major depressive disorder, anxiety disorder, post-traumatic stress disorder |

Plaintiff's Brief at 7. Conversely, the Commissioner contends that Plaintiff's "mental

4

status evaluations were routinely unremarkable," and cites other medical evaluations and treatment notes "show[ing] that Plaintiff was cooperative; alert and fully oriented; appropriately dressed and groomed; exhibited normal thought processes and cognition; normal speech; no abnormal psychomotor activity; and intact memory, attention and concentration." Defendant's Brief at 4 (citations omitted). The Commissioner also relies heavily on the findings of both state-agency psychologists: Dr. Wieliczko, who reported "that Plaintiff could understand, remember and execute simple instructions and tasks in a consistent way, and could interact appropriately and adapt to changes in a work-related setting," and Dr. Kleinman, who affirmed Dr. Wieliczko's findings on reconsideration and "further opined that Plaintiff had no social interaction limitations." Defendant's Brief at 6 (citations omitted).

### III. ALJ'S DETERMINATION

On August 14, 2018, the ALJ held an administrative hearing that Plaintiff's counsel attended unaccompanied by Plaintiff due to alleged psychological concerns that prevented Plaintiff from traveling to the hearing in Newark, New Jersey via public transportation. Tr. 42. On February 14, 2019, the ALJ held a subsequent administrative hearing that Plaintiff attended with counsel via videoconference from South Jersey, New Jersey. Tr. 48-80.

The ALJ found Plaintiff not disabled for purposes of social security benefits. The ALJ determined in Step Two of the five-step sequential analysis that Plaintiff has the following severe impairments: general anxiety disorder, major depressive disorder, borderline personality disorder, learning disorder, chronic headaches, and pain disorder. T. 23. At Step Three, the ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. part 404,

subpart P, appendix 1. Tr. 23-24. Following this determination, the ALJ concluded that Plaintiff had the following residual functional capacity to perform a full range of work at all exertional levels, but with certain nonexertional limitations:

> [T]he claimant must avoid unprotected heights and moving mechanical parts; never climb ladders[,] ropes[, or] scaffolds; able to understand remember and carry out very short simple, routine and repetitive instructions; able to perform work that is not at high production pace; able to tolerate occasional contact with supervisors and coworkers; unable to work with the public; able to perform work where travel and the use of public transportation is not essential to the job; would require occasional supervisory reminders throughout up to one third of the day; due to lapses in concentration[,] focus[,] and memory would be off task five percent of the day; due to impairments would be absent once per month.

Tr. 24-25.

In making her residual functional capacity assessment, the ALJ considered the Plaintiff's physical and mental impairments. With respect to Plaintiff's alleged physical impairments, including gastritis and headaches, the ALJ gave partial weight to the opinion of Consultative Examiner Dr. Juan Cornejo and progress notes from Virtua Family Medicine Center, which begin in May 2011 and extend through July 2015. Tr. 30. The ALJ determined that Plaintiff's alleged back pain was not severe, explaining that although Dr. Cornejo "noted decreased range of motion in the back," full effort during the examination was "questionable." Tr. 30, 485.

With respect to Plaintiff's alleged mental impairments, the ALJ stated that she gave great weight to the findings and diagnosis of three medical professionals in particular: Consultative Examiner Dr. Theodore Brown, Consultative Examiner Dr. Robert Wathers, and Psychiatric Mental Health Nurse Practitioner Harriet Asamoah. Tr. 30. The ALJ stressed that during her mental status examination with Dr. Brown, Plaintiff reported "that she was able to perform personal care, cook, clean, do laundry and shopping […] writ[e]

poems and [play] video games," but nevertheless, Dr. Brown diagnosed Plaintiff with major depression, generalized anxiety disorder, and learning disorder. Tr. 28. In summarizing Dr. Wather's psychiatric examination of Plaintiff, the ALJ noted that Plaintiff reported "a social phobia since the age of seven," worsening depression, suicidal thoughts, and short-term memory issues, but generally could perform "light and limited household chores" and simple math calculations. Tr. 29. Finally, the ALJ summarized the findings of Ms. Asamoah. Most notably, on January 29, 2018, Ms. Asamoah reported "marked limitations in the ability to interact with the public, coworkers or respond appropriately to usual work situations," and that "large groups caused the [Plaintiff] to have flashbacks and panic attacks." *Id.* The ALJ admits that her decision "is not consistent with the most up-to-date records and treatment notes" from Ms. Asamoah, which essentially restate these same findings approximately one year later on an identical form, dated January 4, 2019. Tr. 849-851. The ALJ ultimately determined that Ms. Asamoah's specific findings regarding Plaintiff's social interaction abilities were "overly restrictive." Tr. 30.

The ALJ also gave little weight to an examination report from Dr. Robert McFadden that Plaintiff's severe major depressive disorder had resulted in limited self-care, interpersonal skills, and cognition. Tr. 30, 611. The ALJ explained that Dr. McFadden's findings are not supported by "medical signs and laboratory findings," and concluded that the record as a whole showed that Plaintiff's "daily living activities belie a complete inability to work." Tr. 30-31. In discussing Plaintiff's residual functional capacity, the ALJ dedicated a significant portion of her decision to discussing multiple "function reports" submitted by Plaintiff and Plaintiff's father. The ALJ's summary of such function reports stress in detail Plaintiff's ability to do household chores and entertain herself (e.g., prepare

7

"quick and easy throw together meals," go to the laundry mat, take out the trash, mow the lawn, watch television, play video games, etc.). Tr. 26. Such evidence is appropriate to consider, but the Court takes note that the ALJ appears to have given significant weight to such non-medical evidence.

At Step Four of the analysis, the ALJ determined that Plaintiff had no past relevant work. Tr. 31. At Step Five, however, the ALJ determined that Plaintiff was not disabled for purposes of social security benefits because she could perform the occupations of bagger, inspector packer, and labeler. Tr. 32.

## IV.     ANALYSIS

Plaintiff asserts four main arguments in opposition to the ALJ's decision. First, that two of the three occupations the ALJ determined Plaintiff could perform – inspector packer and labeler – are inconsistent with the ALJ's residual functional capacity assessment because both jobs are performed on a product line and at a high production pace. Plaintiff's Brief at 12-13. Second, Plaintiff argues that the ALJ's residual functional capacity determination "does not include a prohibition on work in or around large groups" despite medical evidence in the record suggesting that large group settings trigger the Plaintiff to have panic attacks. *Id.* at 15. Third, Plaintiff claims that the ALJ did not identify a significant number of jobs in the national economy that Plaintiff could perform given her inability to use public transportation. *Id.* at 17. Finally, Plaintiff contends that the ALJ's residual functional capacity assessment does not provide an adequate explanation of her "severe" borderline personality disorder. *Id.* at 19.

### a.     The ALJ's Exclusion of Work at a "High Production Pace"

Plaintiff's first argument pertains to the testimony of the vocational-expert at the

8

administrative hearing. Upon cross examination by Plaintiff's attorney regarding whether she can perform the recommended jobs of inspector packer and labeler, the vocational-expert explained that both jobs are in the packing industry and are "at the end of a product line [. . .] when the product is getting ready to be shipped or moved out. . ." Tr. 75-76. Plaintiff's attorney asked the vocational-expert whether he excluded occupations performed at a "high production pace," as required by the ALJ's residual functional capacity assessment, and the vocational-expert elaborated on his theory of what such work entails:

> High production to me . . . is when a person is paced in their work activity by a machine or a line. In other words a moving – some moving mechanical part that's keeping the pace for them. That's usually high production. In this type of an operation, there are production quotas but every job has a production quota. If you don't have a production – if they can't meet the production quota they're not going to be able to stay on the job.

Tr. 76.

The Commissioner argues that the ALJ reasonably relied on the vocational-expert's testimony because the vocational-expert also clarified at the hearing that the inspector packer and labeler jobs are "not on [a high production] assembly line." Defendant's Brief at 11 (citations omitted). The ALJ's decision is unclear. A job performed on a "product line" is undoubtedly still performed "on a line," and the Court is not convinced that moving a "line job" to the end of "the line," i.e., after a product has been assembled/prepared and is ready to be packaged/shipped, alters the pace at which the work is performed. The ALJ's decision does not address this issue, first raised by Plaintiff's attorney at the administrative hearing, and later on appeal. Thus, the ALJ's finding that Plaintiff can perform the occupations of labeler or inspector packer is not supported by substantial evidence at this time.

### b.     <u>Plaintiff's Panic Attacks Triggered by Large Group Settings</u>

The Commissioner responds to Plaintiff's second argument – that the ALJ did not include a prohibition of work around large groups in her residual functional capacity finding despite medical evidence that large group settings trigger Plaintiff's panic attacks – by referencing treatment notes that Plaintiff was "cooperative, appropriately dressed and groomed, exhibited normal thought processes and cognition, normal speech, and no abnormal psychomotor activity." Defendant's Brief at 8. Defendant also contends that the opinions of Dr. Wielickzko and Dr. Kleinman establish that "Plaintiff could interact with others appropriately." *Id.* However, the Court cannot find on this record that either Dr. Wielickzko's or Dr. Kleinman's opinion necessarily contradicts the specific findings of Ms. Asamoah that Plaintiff "gets triggered in large groups and begins to have panic attacks." Tr. 609, 850. In fact, the individual assessments by Dr. Wielickzko and Dr. Kleinman simply confirm general statements on identical forms that Plaintiff has the "ability to work in proximity to others without being distracted by them" and has no "social interaction limitations." Tr. 90, 102. Unlike Ms. Asamoah's findings, such findings do not specifically address how Plaintiff responds to large group settings.

Nowhere in her decision does the ALJ discuss Plaintiff's propensity to have panic attacks when around large groups of people. It is entirely possible that the ALJ considered Ms. Asamoah's findings and balanced them accordingly against the record as a whole. However, the ALJ's decision contains no relevant discussion to confirm her process. The ALJ's decision disregards Ms. Asamoah's findings by merely concluding that "with regard to social interaction the findings are overly restrictive." Tr. 30. Again, the broad notion of "social interaction" on its own does not necessarily implicate large group settings, and the

ALJ's statement that her "residual functional capacity [. . .] accounts for all of claimant's limitations as reflected in the medical evidence" is not supported by substantial evidence at this juncture. *Id.* On remand, the ALJ shall provide her reasoning as to why Ms. Asamoah's findings regarding Plaintiff's panic attack response to large group settings ought to be excluded from her residual functional capacity assessment.

    c.    **<u>Plaintiff's Alleged Inability to Use Public Transportation</u>**

Third, Plaintiff argues that the ALJ's Step-5 decision is not supported by substantial evidence because the ALJ did not identify a significant number of jobs in the national economy that Plaintiff could perform given Plaintiff's inability to take public transportation. Plaintiff's Brief at 17. Plaintiff's alleged psychological symptoms stemming from the use of public transportation were well-known to the ALJ and were even the reason the ALJ had to reschedule the initial administrative hearing. Tr. 42. The ALJ also included a related limitation in her residual functional capacity assessment, finding that Plaintiff was "able to perform work where travel and the use of public transportation is not essential to the job." Tr. 25. However, the ALJ's decision does not include a discussion regarding that finding.

The Commissioner cites case law from this district that found an ALJ need not consider a claimant's ability to commute to work in determining if she can return to past work. Defantant's Brief at 9 (citing *Hines v. Astrue*, No. 11-1318, 2012 WL 2679457, at \*8 (D.N.J. July 6, 2021)). Here, however, the ALJ determined that Plaintiff had no past work to which she previously demonstrated an ability to commute. According to Plaintiff, there is a distinction "between a medical impairment impeding getting to work and a simple lack of a means to get to work." Plaintiff's Reply Brief at 6. The Court agrees. *See Lopez Diaz v. Sec'y of Health, Educ. and Welfare*, 585 F.2d 1137, 1141 (1st Cir. 1978) (explaining that "if the

hypothetical claimant could not transport herself to work, utilizing some normal means of transportation, regardless of where she resides, then disability benefits are appropriate for the actual claimant"); *see also Reunions v. Saul*, 833 Fed. Appx. 121, 124 (distinguishing claims where claimant "said that the commute to another job was not worth it" from claims where claimant "was unable to make the commute due to his [disability]") (citations omitted).

However, the Court takes judicial notice that even if Plaintiff's medically provable impairments precluded her from taking more traditional forms of public transportation or driving herself to work, other means of transportation may be available. For example, in New Jersey, NJ Transit Access Link provides transportation to qualifying individuals with disabilities who are unable to use local bus services. Plaintiff also contends that at Step 5, the ALJ's determination as to whether work exists in significant numbers in the national economy should consider "the distance claimant is capable of traveling to engage in the assigned work." Plaintiff's Brief at 18 (citing *Hall v. Bowen*, 837 v. 272, 275 (6th Cir. 1988)). However, if alternative methods of transportation are available, the Court is not convinced that such factor warrants consideration at Step 5. Regardless, on remand, the Court instructs the ALJ to analyze Plaintiff's impairments and symptoms with respect to the Plaintiff's ability to use different forms of public transportation, consistent with the legal standards set forth herein, including in her residual functional capacity assessment, and, if necessary, at Step-5 of the analysis.

**d.      Plaintiff's "Severe" Borderline Personality Disorder**

Plaintiff's final argument is that the ALJ's residual functional capacity assessment and related Step-5 decision do not adequately account for Plaintiff's "severe" borderline

personality disorder. Plaintiff's Brief at 19. Indeed, the ALJ determined that Plaintiff's borderline personality disorder was "severe" at Step 2 of the analysis. Tr. 23. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities," including, but not limited to, "responding appropriately to supervision, co-workers and usual work situations" and "dealing with changes in a routine work setting." 20 C.F.R. § 416.922(a)-(b). The ALJ's residual functional capacity finding did state that Plaintiff was unable to work with the public, but that she could tolerate occasional contact with supervisors and coworkers. However, the ALJ did not explain her reasoning behind the parameters she set.

The Commissioner contends that the ALJ's findings are supported by substantial evidence because the ALJ considered that Plaintiff had "trouble dealing with stress in social situations [. . .] was able to interact with others in her family and carry out daily living activities. . ." Defendant's Brief at 10. The Court disagrees. The regulations specifically address whether the applicant has the capacity to respond appropriately to common work situations. Vague statements about Plaintiff's ability to carry out daily living activities at home and interact with her family do not address this concern. The ALJ's decision does not discuss how Plaintiff's "severe" borderline personality disorder allows for only occasional contact with supervisors and coworkers, but no interaction with the public. Such omission constitutes a lack of substantial evidence at this stage.

The Court concludes that remand, as opposed to reversal, is appropriate. On remand, consistent with the Court's Opinion, the ALJ shall revisit Step-4 of the five-step, sequential analysis, and determine whether the evidence in the record warrants revising her residual functional capacity assessment to reflect Plaintiff's alleged propensity to have panic

attacks in large group settings, inability to use certain forms of public transportation, and resulting symptoms from her borderline personality disorder, which the ALJ determined was "severe" at Step 2. The ALJ shall also revisit her Step-5 determination that Plaintiff can perform the occupations of inspector packer and labeler to determine whether such occupations are consistent with the exclusion of work at a high production pace, and, if necessary, whether a sufficient number of jobs Plaintiff can perform exist in the national economy.

## V.   CONCLUSION

For the foregoing reasons, the Court **vacates** the decision of the ALJ and **remands** for proceedings consistent with the above analysis.

An accompanying Order shall follow.

Date: 9/28/2021

RENÉE MARIE BUMB, U.S.D.J.